E. G. BOOTH, Appellee, v. CENTRAL STATES MUTUAL INSURANCE ASSOCIATION, Appellant.

No. 46549.

OCTOBER 17, 1944.

G. C. Stuart, of Chariton, for appellant.

H. F. Garrett, of Corydon, for appellee.

BLISS, J.—The appellant, on April 6, 1942, insured the appellee against the loss by fire of a certain panel truck during the following year. On March 25, 1943, the truck was destroyed by fire. The appellant refused to pay the loss for two reasons,

the first one being that the truck which was burned was not the one described in and covered by the policy. The second reason was that appellee had sold the truck prior to the time it was burned. The refusal to pay the loss and the reasons therefor were made known to the appellee when claim for the loss was made. A number of letters in regard to the matter passed between the attorney for the appellee and Mr. Wilson, the vice president and secretary of the appellant. In his letters the attorney admitted that the truck, through the mutual mistake of the insured and the insurer, had been incorrectly described in the policy, but that the truck which burned was the truck which was insured and which the parties intended to be insured. Respecting appellant's contention that the appellee had sold the truck before it was burned, the attorney conceded that the appellee had been negotiating with a purchaser for the sale of the truck, but the sale was not completed and the appellee was the owner of and in possession of the truck when it was burned.

The first letter written by the attorney to the appellant was on April 7, 1943. On the following day, Mr. Wilson replied, with some sarcasm, that he had already written "our insured" denying liability. On April 28, 1943, appellee's attorney wrote the appellant suggesting that it reconsider its rejection of the claim. On April 30, 1943, Mr. Wilson wrote this short letter:

"Received your letter in regard to the above claim and there are so many reasons why we should not pay this claim that we don't feel it necessary to go into a lot of correspondence over it. We think all that is necessary to say is that we are denying liability and do not intend to pay."

On May 8, 1943, the attorney wrote the appellant acknowledging its letter of April 30th, and stating:

"I regret your rejection of this claim for it will now be necessary for me to file suit against you at an early date. I do not wish to file such suit without giving you another opportunity to adjust this claim. I shall assume, if I do not hear from you within ten days, that you propose to stand upon your objection."

Appellant did not reply to this letter within the ten-day

limit, and the attorney prepared an original notice in this action for the term of the Wayne district court commencing on September 6, 1943, and it was duly served on the appellant by service upon its president and treasurer, E. A. Hayes, on May 21, 1943. On the same day this notice was served upon Mr. Hayes, Mr. Wilson, the vice president and secretary, wrote a letter to appellee's attorney, expressing surprise that he insisted on pushing the claim, and further stated:

"It looks to me that it would be too bad for Mr. Booth to spend money in a law suit, trying to recover on his insurance on a property that he did not own as it would be expensive money paid out eventually for nothing. As you no doubt know, the Insurance Department wouldn't allow us to pay this claim if we wanted to. The only way we could pay it was after we had gone through all the courts and we had lost and the court had ruled that we should pay for property that our assured had sold previous to the time of the accident and that we should pay money to a party that we did not have insured. * * * I am sending a copy of this letter to our insured as we want to be fair with him, and we don't want him spending money in law suits without first being fairly warned as to what he is going into. You know you can't try law suits for nothing and especially when it seems to be necessary to carry it so far in court. It would be required for us to do that so as to convince the Department that it was a claim we should pay. It would not only be expensive for him but for us."

This letter mailed to Mr. Booth, intimating that his attorney was not fairly advising him, was sent with the purpose and hope of deterring him from going into court to collect his claim. Mr. Booth evidently thought he had an honest claim, which he was willing to spend money to establish if necessary. On August 13, 1943, he filed his petition alleging the payment of the premium, the execution of the policy intended by himself and the appellant to cover the truck which was burned and which was registered in his name in Wayne county, and his ownership of the truck at the time of its destruction. He prayed that the policy be reformed so as to correctly describe this truck and for judgment for $500 and for general equitable relief.

The appellant failed to plead or to appear, as so notified in the original notice and required by statute, on September 7, 1943, the second day of the September term. Default was taken at this time against the appellant and on September 14, 1943, the appellee supported the allegations of his petition by proof submitted to the judge who later heard and denied appellant's motion to set aside the default. Judgment and decree was rendered on September 15, 1943, for the appellee, reforming the policy as prayed, and for $500. Appellee's attorney notified appellant of the judgment by letter dated September 23, 1943, and on October 2, 1943, appellant filed its motion to set aside the default. On October 16th it filed an amendment to the motion, with affidavits of Hayes and Wilson, and on February 2, 1944, a second amendment was filed, which simply contained a verification of the motion and first amendment by appellant's attorney. After hearing on the last date the court, on February 3, 1944, filed its opinion overruling the motion.

The motion is based upon Rule 236, of the Rules of Civil Procedure, which rule provides for setting aside defaults. The motion was timely filed. The rule, so far as pertinent, states:

"On motion and for good cause shown, and upon such terms as the Court prescribes, but not ex parte, the Court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty."

The ground upon which appellant relies is "excusable neglect."

Rule 236 superseded section 11589, Code of 1939, which provided:

"Default may be set aside on such terms as to the court may seem just, among which must be that of pleading issuably and forthwith, but not unless an affidavit of merits is filed, and a reasonable excuse shown for having made such default * * *."

The essentials, of pleading issuably and forthwith and of filing an affidavit of merits, of Code section 11589, are not required by Rule 236. How the "good cause" is shown, other than by the motion, is not specified in Rule 236. Appellant con-

tends that the new rule gives a broader discretion to the trial court than did section 11589. Whether that may be true, considering the section and the rule each as a whole, is a matter we need not pass upon under the record before us. The appellant states that its default should be condoned as "excusable neglect." Section 11589 required a "reasonable excuse" to warrant setting aside the default. If there is any distinction between the two it is indiscernible and of no importance. In construing section 11589 this court has used the terms "excusable," and "inexcusable," neglect.

The burden was upon the appellant to sustain its motion by showing excusable neglect. To do so it verified its motion, to which were attached and made a part thereof the affidavits of Hayes and Wilson and each of the letters referred to herein. The appellee filed nothing.

The appellant concedes its neglect. Webster's New International Dictionary, Second Ed., defines this word as "Omission of proper attention; disregard of duty, from indifference or willfulness; failure to do, use, or heed anything; negligence." In attempting to excuse its neglect, the appellant presents to us the following reasons:

1. The original notice in this action against it was served upon it by service upon Mr. Hayes, its president and treasurer, sometime in the afternoon after appellant's office was closed, at his residence in Mount Pleasant, while he was working in the yard of his home.

2. The duties of Mr. Hayes, as president and treasurer, were principally confined to the production end of the business, which took a "lot of his time," and he had nothing to do with the claim department of the company, which was in charge of Mr. Wilson, in his official position of vice president and secretary.

3. Since January 1942, Mr. Hayes had been in charge of the sale of war bonds in his home county, and for some months previous to the date of his affidavit (October 4, 1943) he had been in charge of the sale of war bonds in five near-by counties, and he "devoted a lot of his time" to see that these counties under his supervision met their bond quotas.

In his affidavit Mr. Hayes stated that because of his activities in the sale of war bonds and in the production end of the

appellant's business, "including the fact that the original notice * * * was served upon me at my home rather than at the office," the service of the notice "entirely slipped my mind" and "I entirely neglected" to call the matter to the attention of Mr. Wilson, or any other officer or employee of the company.

Reason 1 is no worthwhile reason. Neither does it qualify as any excuse whatsoever. Working about the lawn at home before the evening meal should tend to serenity and peace of mind and freedom from the cares and distractions of the office. Mr. Hayes did not state just what work he was doing, or why it permitted no impression on his mind or appreciation of what the officer was doing. He gave no information as to what he did with the notice, or what became of it, or whether it was ever found. No one else has thrown any light on that matter. He was not "producing" any insurance business, or doing any "spade work"—to use the words of his attorney—for the September war-bond drive, that late afternoon in May. As the highest officer for many years in his company, which was established in 1929, he probably had considerable knowledge of claims and litigation and knew the importance of a notice of suit. Appellee's claim was No. 9058. The place where an original notice was served is rarely a factor in a proceeding of this kind, and we do not consider it one in this case.

Reason 2, likewise, is of little, if any, merit. Most defendants, whether individual or corporate, are engaged in work or business of some kind. The president of a corporation ordinarily has no more business cares, worries, duties, or other matters requiring his attention than the grocer, the butcher, the farmer, the doctor, or other business or professional man. If the fact that one is so engaged excuses his neglect in giving no attention or consideration to a notice of suit served upon him, then a sufficient showing to set aside a default may be made in a great many cases. Mr. Hayes was the head of the appellant. He was the over-all supervising manager of its business, notwithstanding Mr. Wilson was chief of the claim department. Its management was closely concentrated. Hayes and Wilson held the four principal offices. During the period from May 21st to September 23, 1943, meetings of the officers were very likely held, and it would be unusual if the claims filed were not discussed; and

stranger still that Mr. Wilson, who had had the claim called to his attention repeatedly by letters to him and by his replies thereto, and who had been told that action would be instituted if the claim was not adjusted, did not speak to Hayes of the matter and inquire whether notice of the action had been served upon him.

Reason 3 is the activity of Mr. Hayes in the war-bond drives. He supervised these drives. He does not state just what he did, when he did it, or how much time he spent in the work. He simply said that he "devoted a lot of time" to it. His time and efforts were not wholly devoted to the bond sales, for he stated that he also devoted "a lot of time" to the appellant's insurance business, which certainly required him to give some attention to an original notice served upon him in an action against his company. As the head man in the counties assigned to him his duties very likely were merely supervisory and the appointment of committees to give direct attention to the making of sales. The bond sale was in September, and certainly, on May 21st and for weeks thereafter, his mind should not have been so occupied with preparation for the bond drive as to "entirely neglect and let slip" from his mind the matter of the notice. We are constrained to say that singly and collectively the "reasons" are without merit, and the appellant and its officers have not established "excusable neglect" or "reasonable excuse" for the default.

Both sides have discussed decisions of this court and of other courts. Because there is seldom close similarity of facts, these decisions are of little aid except as they bear upon applicable general principles. We are reluctant to reverse a trial court, even in the denial of a motion of this kind, unless it has clearly abused its legal discretion. Here the appellant was not misled in any way. Its officers simply gave no attention to the matter, although each was notified that the matter would be brought into court. It is but a case of carelessness, neglect, and inattention upon the part of these officers, without reasonable excuse.

The judgment is therefore—Affirmed.

All JUSTICES concur.