Bertha TRUEBLOOD, Plaintiff,

v.

GRAYSON SHOPS OF TENNESSEE, INC., a foreign corporation, Defendant.

Civ. A. No. 3499.

United States District Court
E. D. Virginia,
Norfolk Division.
Feb. 20, 1963.

Bangel, Bangel & Bangel, L. David Lindauer, Portsmouth, Va., for plaintiff.

Rixey & Rixey, Fred P. Aucamp, Norfolk, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

Plaintiff filed this action on March 6, 1961, alleging negligence on the part of defendant in failing to maintain its premises in a safe condition, as a result of which the plaintiff, on September 16, 1960, was caused to fall, thereby sustaining serious and permanent injuries.

The summons and a copy of the complaint were served on March 20, 1961, with the marshal's return being noted as follows:

"I hereby certify and return, that on the 9th day of March, 1961, I received this summons and served it together with the complaint herein as follows: and on the 20th day of March 1961 I served same on the Grayson Shops of Tennessee, Inc., by delivering one true copy to Mrs. Ruth Butler who is authorized to accept service for Mr. W. S. Peck who is the Registered Agent at Richmond, Virginia."

The defendant did not appear, answer or otherwise contact the court or counsel for the plaintiff until April 18, 1961. On April 13, 1961, plaintiff filed a motion for default judgment, default was noted, and the court thereupon determined that defendant was liable to plaintiff for damages by a default judgment order. A hearing on damages was scheduled for April 24, 1961, but, in the interim, defendant filed its motion to set aside the default alleging excusable neglect occasioned by an error in the computation of time within which the complaint was to have been answered.

When the summons was served upon Ruth Butler on March 20, as one authorized to accept service for W. S. Peck, the latter was out of the city. He returned to Richmond on March 27. The following day, March 28, Peck mailed the process to the defendant in New York where it was received on March 29. Defendant delivered the papers to its insurance broker on March 30. The letter from Margaret M. Dougherty, attached to the claim department of the broker, Francis C. Carr—Fox & Pier, Inc., dated March 30, 1961, addressed to the liability claim department of Hartford Accident & Indemnity Co., New York, a copy of which was sent to the defendant, after referring to a policy number and style of the case, states:

"We enclose herewith twenty day U. S. District Court, Norfolk division Summons and Complaint served March 29th, on our assured, by mail. Plaintiff's attorney Stanley J. Bangel, Law Building, Portsmouth, Va. Judgment in the amount of $125,-000.00.

"Will you kindly give this matter the necessary attention protecting our assured's interest."

The broker's letter was incorrect in two respects. In the first place service was on March 20 and not March 29. In the second place service upon the assured was not by mail. A glance at the complaint would have revealed that process had been issued by the clerk on March 6 which, in itself, should have been a flag of danger. Nevertheless, the served papers would not necessarily bear the date of service.

The foregoing letter was received by the New York "Metro" office of Hartford Accident & Indemnity Company on March 31. What thereafter transpired is a comedy of errors. The "Metro" office handles only claims for the Counties of New York and Kings. There is a foreign unit which handles out-of-state claims. The two offices are on the same floor, separated only by a partition. The foreign department apparently did not receive the papers until April 6. No one can account for the delay of six days in transferring the letter from one side of a partition wall to the other. The foreign unit thereupon sent the papers to the Norfolk Claims Office of Hartford on April 6, 1961, without any accompanying letter.[1] Included among the papers was the broker's letter of March 30 with its incorrect reference to the date of service.

The claim department at Norfolk received the letter on Monday, April 10, 1961. Byrne, the Norfolk claims representative for Hartford, had started work for this company on January 1, 1960. He had been notified of the accident when it occurred in September, 1960. He visited the claimant but was told that she intended to employ counsel. He stated that he did nothing more about the matter as he was fearful of "stirring up litigation." He assumed from the nature of the claim that it would be resisted. When the suit papers arrived on April 10, he noted the broker's letter reflecting that service had been made upon the defendant on March 29. He failed to notice the date that process was issued by the clerk. Believing that he had twenty days from March 29 and relying upon the age-old practice of awaiting the final day, he ultimately delivered the papers to Hartford's Norfolk attorneys on April 18, 1961. One glance at the suit papers by the attorney prompted a telephone call to the clerk, at which time it was ascertained that the

default judgment had been entered. The attorney forthwith filed a motion to set aside the default pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure. Ten days later, on April 28, the attorney set forth additional grounds to set aside the default by asserting that W. S. Peck was not the registered agent for defendant as of the date of service. While the point is made in argument, no ground alleging that service upon Ruth Butler was improper has ever been formally asserted.

If Peck were not the defendant's agent at the time of service, the default judgment would be a nullity and it would be totally unnecessary to discuss the other contentions. We feel, however, that Peck was the defendant's authorized agent upon whom process could be served in Virginia. The confusion exists by reason of a change in the registered agent from L. C. Major, who served as defendant's assistant secretary and registered agent from September 25, 1958, until Peck took over early in January, 1961. Major was sick during the latter part of 1960 and Prentice-Hall, Inc., representing numerous domestic and foreign corporations, including the defendant, secured Peck as a successor to Major. The defendant agrees that Prentice-Hall had full authority to select an agent in Virginia upon whom process could be served and that defendant had no contact with Peck until after receipt of the suit papers on March 29, 1961. Major maintained a card file showing the companies represented, with instructions as to where to send process, tax returns, etc. This card file, including defendant's card, was obviously obtained by Peck from Major with full authority of Prentice-Hall.

By letter dated January 3, 1961, Prentice-Hall advised Peck, in part, as follows:

"This will confirm our several conversations in which I advised that

---

1. The date of April 6, 1961, is according to a notation in the file. It is probable that it was mailed on Friday, April 7, and the weekend intervened.

we are very happy that as of this date you will serve as our local representative for the Commonwealth of Virginia and to act as process agent for the domestic and foreign corporations for which we are now furnishing statutory representation services and to any future companies which may call upon us for services in that connection.

"As you perhaps are aware, it will be necessary to have you appointed an Assistant Secretary of these individual respective companies.

"Your authority as such Assistant Secretary will be expressly limited to acting as the registered agent for a particular corporation upon whom any process, notice or demand required or permitted by law may be served and to perform such duties as may be incident to acting as such registered agent.

"We are now in the process of preparing the appropriate forms, resolutions and certificates of change for this purpose and as they come in from the various companies they will be sent to you so that you can file the same with the State Corporation Commission.

\* \* \* \* \* \*

"Mr. Major, the present agent for service, has a file of cards of the companies represented which card gives you instructions as to where to send process, tax returns and the instructions must, of course, be meticulously followed.

"I propose to send a list of changes to you and to ask you to contact Mr. Major and get the card for the particular company in question so that eventually you will have the entire file of cards."

■ By this letter Peck was appointed process agent for defendant and other companies *as of January 3, 1961.* True, a change in the *registered* agent was not completed until the filing of the state-

ment of change was recorded in the office of the State Corporation Commission on May 3, 1961 (action that was undoubtedly prompted by the default judgment already entered) but this did not foreclose the authority of Prentice-Hall, acting for the defendant, to designate a process agent as of January 3, 1961. To hold otherwise would have the effect of stating that, if a registered agent died, no agent could be designated until the adoption of a resolution by the board of directors, the completion of forms and the attendant formalities had been accomplished. The related statutes, sections 8–60 and 13.1–111 of the Code of Virginia, 1950, as amended, are permissive and for the benefit of the party seeking to obtain service of process. The failure on the part of the corporation to comply with the legal formalities cannot be used as a shield to escape liability. In section 13.1–111 it is noted:

"Nothing herein contained shall limit or affect the right to serve any process, notice or demand, required or permitted by law to be served upon a corporation in any other manner now or hereafter permitted by law."

Under Rule 4(d) (3) of the Federal Rules of Civil Procedure it is provided that service shall be made:

"Upon a \* \* \* foreign corporation \* \* \* by delivering a copy of the summons and of the complaint to an officer, a managing agent or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

Since it is conceded that Prentice-Hall had full power and authority to designate a person as agent upon whom service could be effected upon the defendant in Virginia, Prentice-Hall made the appointment and the mere failure to comply with section 13.1–110 prior to the

date of service is unimportant. While Peck stated that it was his understanding that his appointment as *registered* agent was subject to "official appointment" he did not hesitate to act as "process agent" upon receipt of the suit papers in question even though, at the time, he knew that the official form had not been received and recorded.

■ There are, indeed, suspicious circumstances surrounding the acts of the defendant following receipt of notice that a default judgment had been entered. Whether these circumstances should be attributed to the defendant or its insurance carrier, Hartford Accident & Indemnity Company, are not clear from this record. Suffice it to say that it ill behooves Hartford, apparently the ultimate party in interest, to present such an obstructionist as the New York attorney appearing at the depositions taken in New York on October 24, 1961. In 19 years as an attorney and nearly nine years as a district judge, it can be said without contradiction that the parallel of this deposition is unknown. The tactics of the New York attorney resulted in a necessary abandonment of the cross-examination of the witness, Sandman, the controller of defendant corporation. While we believe that the defendant should be permitted to vacate the default judgment *upon terms,* we cannot overlook the fact that this defendant, or its liability insurance carrier, has endeavored, at every stage of the proceeding, to create unnecessary trouble and expense for plaintiff's attorneys. Two trips from Portsmouth to New York for the purpose of attending depositions taken by defendant; one trip to Richmond, Virginia, for the same purpose; four appearances in court due largely to a lack of evidence or reluctance on the part of the defendant

to reveal all facts, all point to substantial lack of cooperation from one who seeks relief from a default judgment. As a condition to vacating the default judgment the defendant or its insurance carrier will pay to counsel for plaintiff (1) the taxable costs of this action to date, (2) the cost of the copies of depositions heretofore transcribed (if not heretofore paid), together with the cost of all long distance telephone calls and certified copies of documents, and (3) the sum of $2000.00 to cover attorney's fees and such expenses as were not heretofore paid by defendant.

■ Authority to set aside a default judgment is grounded in Rule 60(b), Federal Rules of Civil Procedure, where relief may be granted for, among other reasons, "mistake, inadvertence, surprise, or excusable neglect." A mere entry of default may be set aside for good cause shown under Rule 55(c). Under either rule the authority is to be exercised in the sound discretion of the trial court [2] although the justification for vacating an entry of default is somewhat less stringent than what is required by Rule 60(b). Teal v. King Farms Co., D.C., 18 F.R.D. 447; 6 Moore, Federal Practice, Sec. 55.10(1), p. 1827.

■ There is no uniform interpretation of what constitutes "mistake, inadvertence, surprise, or excusable neglect." Perhaps the terms are not capable of more precise definition. Interesting comments as to the limits and nature of the discretion exercised will be found in 3 Barron & Holtzoff, Federal Practice & Procedure, Sec. 1217, p. 89, and 7 Moore, Federal Practice, Sec. 60.19, p. 225. From these statements and a study of the authoritative decisions, we learn that default judgments are not favored in law; that courts exist to do justice

---

**2.** Ledwith v. Storkan, D.C., 2 F.R.D. 539; Koen v. Beardsley, 10 Cir., 63 F.2d 595; Chapman v. Henry A. Dreer, Inc., 14 F.R.D. 218; Ellington v. Milne, D.C., 14 F.R.D. 241; In re Cremidas' Estate, 14 F.R.D. 15, 14 Alaska 234; Federal Enterprises v. Frank Allbritten Motors, D.C., 16 F.R.D. 109; Bowles v. Branick, D.C., 66 F.Supp. 557; Tozer v. Charles A. Krause Milling Co., 3 Cir., 189 F.2d 242; Wolfsohn v. Raab, D.C., 11 F.R.D. 254.

and are reluctant to enforce an unjust judgment. Of equal importance is the requirement that responsive pleadings be filed within a limited time and that a party should not be permitted to flout these time limitations with impunity. Not only must there exist a good reason to set aside the default on the ground of "mistake, inadvertence, surprise, or excusable neglect," but the moving party must show that he has a meritorious defense to the action. The bare wording of Rule 60(b) does not require the showing of the existence of a meritorious defense but this is judicially established and apparently is left within the sound discretion of the trial court. Just as there are few guideposts as to what constitutes excusable neglect or inadvertence in any given case, there is no universally accepted standard among courts as to what satisfies the requirement that a party show a meritorious defense. Roughly the cases fall into three categories. Some courts have insisted upon a specific recitation of facts in the motion, answer or affidavit which, if proven, would constitute a meritorious defense. Atlantic Dredging & Constr. Co. v. Nashville Bridge Co., 5 Cir., 57 F.2d 519; Federal Enterprises v. Frank Allbritten Motors, supra; Koen v. Beardsley, supra; Bowles v. Branick, supra; Matheson v. National Surety Co., 9 Cir., 69 F.2d 914; Sebastiano v. United States, D.C., 103 F.Supp. 278, aff'd. 6 Cir., 195 F.2d 184; Elias v. Pitucci, D. C., 13 F.R.D. 13. Another approach to the problem is that group of cases which accepts allegations, conclusions and even denials in the moving party's motion or supporting affidavit. Tozer v. Krause Milling Co., 3 Cir., 189 F.2d 242; Ellington v. Milne, supra; Dalminter, Inc. v. Jessie Edwards, Inc., D.C., 27 F.R.D. 491; Chapman v. Dreer, supra; Barber v. Turberville, 94 U.S.App.D.C. 335, 218

F.2d 34. Finally, the courts have treated oral statements, affidavits or *the court's own assumption* as sufficient indication of the existence of a meritorious defense. Ledwith v. Storkan, supra; Alopari v. O'Leary, D.C., 154 F.Supp. 78; Huntington Cab Co. v. American Fidelity & Cas. Co., D.C., 4 F.R.D. 496; Standard Grate Bar Co. v. Defense Plant Corp., D.C., 3 F.R.D. 371. These latter cases reflect that the trial courts are permitted a great deal of latitude in exercising their discretion as to what constitutes a showing of meritorious defense.

In the case at bar the only showing of a meritorious defense emanates from (1) a statement by Byrne, the local claims representative for Hartford, to the effect that the nature of the claim suggests a defense, and (2) the statement of defendant's attorney in oral argument that the case was not one of liability. Standing alone these statements can scarcely be deemed sufficient to comply with the first two groups of cases as stated above. Especially is this true when we note that no proposed answer has been submitted or tendered. However that may be, the very nature of plaintiff's complaint gives rise to the belief that cases where persons slip on the floor of a store are customarily defended with varying degrees of merit.

Balancing the conflicting policies, the court is of the opinion that the failure to answer within the required time is the result of excusable neglect[3] and that the defendant, upon an indication of compliance with the terms prescribed herein, may submit to the court a proposed answer, together with all statements of witnesses and reports of investigation. Upon a review of the foregoing the court will then determine whether a *prima facie* meritorious defense exists, although it must be con-

---

3. Barber v. Turberville, 94 U.S.App.D.C. 335, 218 F.2d 34; Tozer v. Krause Milling Co., 3 Cir., 189 F.2d 242. These cases adopt the liberal construction of Rule 60(b). Matters involving large sums should not be determined by default judgment, if it can reasonably be avoided. Henry v. Metropolitan Life Ins. Co., D.C.Va., 3 F.R.D. 142, 144.

ceded by defendant that ample opportunity has heretofore been afforded the defendant to supply such evidence. It has been said that "courts will not permit technicalities to prevent them from remedying injustice." To permit an inquiry of damages in a case which may have a very meritorious defense on the facts would result in an injustice that a court should not permit where, as in this case, the defendant acted immediately upon knowledge that it was in default, conditioned, of course, upon compliance with the terms.

The defendant will elect, within twenty days from this date, as to the course of procedure it may follow. If the terms and conditions set forth are not deemed acceptable to defendant, the default judgment will be permitted to stand.