FLEXSTEEL INDUSTRIES, INC., a Minnesota Corporation, Appellee,

v.

MORBERN INDUSTRIES LIMITED, a Canadian Provincial Corporation, Appellant.

No. 57175.

Supreme Court of Iowa.

March 17, 1976.

Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellant.

O'Connor, Thomas, Wright, Hammer, Bertsch & Norby, Dubuque, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and HARRIS, JJ.

MASON, Justice.

This court granted defendant permission, pursuant to rule 332, Rules of Civil Procedure, to take an interlocutory appeal from an order of the trial court denying defendant's motion to set aside a default under rule 236, R.C.P. The order granting default dated February 12, 1974, recited that defendant was in default for failure to file an appearance or pleading and its default was entered of record against defendant. A hearing on plaintiff's claim for damages was set for March 15.

Plaintiff, Flexsteel Industries, Inc., is a Minnesota corporation authorized to do business in the state of Iowa with its principal office in Dubuque. Defendant, Morbern Industries Limited, is a provincially incorporated company organized under the laws of the Province of Ontario, Canada, with its principal place of business in Cornwall, Ontario. Beginning in 1969, plaintiff purchased "vinyl-coated fabrics" from defendant, a manufacturer and distributor of that product. Plaintiff manufactures and sells furniture and for a time used defendant's vinyl fabric for upholstery. Some $274,552.00 was paid by plaintiff to defendant.

According to the petition, filed December 6, 1973, defendant's vinyl, after application to pieces of furniture, "became brittle and cracked." This precipitated the return of the furniture for repair and replacement, the rescission of contracts, expenses and loss of good will.

In division 1 of its petition plaintiff claims relief for an alleged breach by Morbern of its implied warranty of fitness which plaintiff relied on in its use of the vinyl-coated fabrics. In division 2 plaintiff relies on defendant's alleged breach of an implied warranty of merchantability and Morbern's knowledge of the purpose for which plaintiff intended to use the product. In the third division plaintiff's claim for relief is predicated on defendant's alleged negligence in the manufacture, sale and distribution of the product involved in four specified particulars. Plaintiff asked $350,000.00 damages be awarded.

Service of original notice on defendant was made by filing with the secretary of state on December 11, 1973, duplicate copies of the original notice and by mailing on December 21 by registered mail a notification of said filing with the secretary of state to defendant at the address of its principal office in Cornwall, Ontario, Canada, pursuant to section 617.3, The Code, 1973. The original notice notified defendant that unless it appeared and defended within 60 days of the date of filing with the secretary of state, default would be entered.

In his affidavit which is a part of the record before us Ronald Thompson, president of defendant, maintains that he received the original notice and petition on December 19, 1973, and that on the same day he delivered copies to Mr. James Carr of the Underwriters Adjustment Bureau of Cornwall, Ontario, who was locally involved in the case. Thompson also notified Mr. Bill Hackbarth of Whittaker Corporation, Los Angeles, a parent company of defendant. These actions were taken to enable defendant's insurer, Pacific Indemnity Group, to learn the facts and handle the defense.

Affiant further stated that at all times it was the intention to defend the action and its insurance carriers had been handling the matter on defendant's behalf for a considerable period. After notifying the insurance

carrier of the filing of the suit defendant inquired from Carr and Hackbarth whether the matter was progressing and the appearance and defense were, in fact, being handled by the insurer within the period set in the original notice and was informed by both sources "that there was no problem and this was indeed so."

In any event, the job of investigating plaintiff's claims against defendant fell upon Gordon J. Renner, "Casualty Claims Supervisor" for Pacific Indemnity. An affidavit by Mr. Renner disclosed he notified the Des Moines law firm of Bradshaw, Fowler, Proctor and Fairgrave (defendant's attorneys) of the claim February 11, 1974. Renner informed attorney Michael Figenshaw of this law firm that service on defendant had been attained December 18, 1973. It was Renner's understanding the 60 day period was tolled on that date rather than on December 11, date of filing with the secretary of state.

Renner immediately forwarded Figenshaw the "suit papers involved" so that there would be sufficient time to appear within the 60 day period as it commenced from December 18. Upon receipt of the papers, Figenshaw realized the mistake. February 13 he informed Renner time had run out.

Meanwhile, February 12, the trial court entered an order declaring defendant to be in default. February 19 defendant filed a motion to set aside the default. This motion was supported by the previously discussed affidavit of Mr. Renner. Later, the affidavit by defendant's president, Ronald Thompson, was filed in support of the motion.

March 7, 1974, defendant filed answer separately pleading to each division of the petition by admitting the preliminary or introductory paragraphs of each division, those concerning the corporate status of each party and the location of their principal offices or places of business. Defendant also admitted a course of dealing between plaintiff and defendant for the purchase and sale of defendant's products. Defendant denied the specific paragraphs in division 1 pertaining to the theory of implied warranty for fitness, those in division 2 relative to the implied warranty of fitness for the purposes for which plaintiff intended to use the products and those paragraphs in division 3 alleging negligence of the defendant and proximate cause. Defendant also denied those paragraphs of each division regarding damages.

March 25, the trial court overruled defendant's motion to set aside the default for the reason there was an insufficient showing defendant possessed a "meritorious defense," as well as the fact defendant "failed to account, in any manner, for the delay in acting between the receipt of the Original Notice in the Los Angeles office of Defendant's insurance company and February 11, 1974 * * *," the date the Des Moines law firm was contacted.

April 9, 1974, defendant's application for interlocutory appeal was granted.

The appeal presents as issues for review the questions: (1) whether the trial court abused its discretion in refusing to set aside default for the reason defendant's failure to appear was due to mistake, inadvertence, misunderstanding or excusable neglect of another; and (2) did defendant make a prima facie showing of a meritorious defense?

I. Plaintiff and defendant cite and distinguish a multitude of Iowa cases bearing upon rule 236, Rules of Civil Procedure, which prescribes when and to what extent actions to set aside a default may be taken. It provides:

"On motion and for good cause shown, and upon such terms as the Court prescribes, but not ex parte, the Court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty. Such motion must be filed promptly after the discovery of the grounds thereof, but not more than sixty days after entry of the judg-

ment. Its filing shall not affect the finality of the judgment or impair its operation."

This rule has been exhaustively analyzed in several cases and the analysis need not be repeated here. See *Davis v. Glade*, 257 Iowa 540, 133 N.W.2d 683; *Hannan v. Bowles Watch Band Co.*, 180 N.W.2d 221 (Iowa 1970); *In Re Estate of Staab*, 192 N.W.2d 804 (Iowa 1971); and *Dealers Warehouse Co. v. Wahl & Associates*, 216 N.W.2d 391 (Iowa 1974).

In *Williamson v. Casey*, 220 N.W.2d 638, 639 (Iowa 1974), this court reiterated the well settled rules of review in this type of action:

"A proceeding under rule 236 is at law. A trial court has wide discretion in making its ruling. The burden is on the movant to plead and prove good cause to set aside the default or judgment thereon. Good cause is shown only if one of the grounds in the rule is proved. We are bound by trial court findings of fact if supported by substantial evidence. * * * [citing authority]. We view the evidence in its light most favorable to the court's ruling."

Likewise, it has been " * * * held several times the trial court has a broad discretion in ruling on such a motion as this and we will not interfere with its order in the absence of a showing of abuse of such discretion. * * * [citing authority]. Also, we are more reluctant to interfere with the grant of such a motion than with its denial. * * * [citing authority]." *Insurance Co. of No. Amer. v. Sperry & Hutchison Co.*, 168 N.W.2d 753, 756 (Iowa 1969).

"A 'good cause' is a sound, effective, and truthful reason. It is something more than an excuse, a plea, apology, extenuation, or some justification, for the resulting effect." It also requires "at least a claimed defense asserted in good faith." *Svoboda v. Svoboda*, 245 Iowa 111, 118, 60 N.W.2d 859, 863; *Hobbs v. Martin Marietta Co.*, 257 Iowa 124, 128, 131 N.W.2d 772, 775.

"To be careless and inattentive, as the terms are applied here, means to give the matter no care, no attention, approaching gross neglect or willful procrastination. *Edgar v. Armored Carrier Corp.*, * * * 256 Iowa 700, 707, 128 N.W.2d 922, 926; *Sioux City Vinegar Mfg. Co. v. Boddy, et al.*, 108 Iowa 538, 79 N.W. 350." *Hobbs v. Martin Marietta Co.*, 257 Iowa at 131–132, 131 N.W.2d at 777.

"As previously defined by this court, unavoidable casualty or misfortune means some casualty or misfortune growing out of conditions or circumstances that prevented the party or his attorney from doing something that, except therefor, would have been done, and does not include mistakes or errors of judgment growing out of misconstruction or misunderstanding of the law, * * * *." *Claeys v. Moldenschardt*, 260 Iowa 36, 148 N.W.2d 479, 483–484, cited with approval in *Haynes v. Ruhoff*, 261 Iowa 1279, 157 N.W.2d 914, 915–916.

Neglect as used in rule 236 has been defined as "omission of proper attention; disregard of duty, from indifference or willfulness; failure to do, use, or heed anything; negligence." *Booth v. Central States Mut. Ins. Assn.*, 235 Iowa 5, 9, 15 N.W.2d 893, 895.

█ While it is true if different inferences may be drawn from fact findings of the trial court, the findings are binding on this court, " * * * if there is no factual issue, the question is one of law and the appellate court is not bound by the determination of the trial court." *Hobbs v. Martin Marietta Co.*, 257 Iowa at 130, 131 N.W.2d at 776.

Finally, "precedents are of little aid in proceedings of this kind in the determination of a particular appeal as there is much difference in the facts in the various cases. The facts in each case must rule its decision. * * * [citing authorities]." *Svoboda v. Svoboda*, 245 Iowa at 118, 60 N.W.2d at 863.

There is substantial evidence in the record which would support a finding that Thompson, president of defendant corporation, upon receipt of the "suit papers," whether it be on December 18 as stated in Thompson's affidavit or sometime after De-

cember 27 which is indicated by the record, immediately delivered, personally, to Carr in the Cornwall office of defendant's insurance carrier a duplicate copy of the notice and petition. Thompson also notified Hackbarth of the Whittaker Corporation in Los Angeles by telephone of receipt of this notice and on the same day mailed the original notice to him. Thompson also made inquiry of Carr and Hackbarth, at a date not stated in Thompson's affidavit, if the matter were progressing and if an appearance and defense were, in fact, being made. There is also Thompson's statement defendant intended to defend.

In view of Thompson's diligence this record would not support a finding defendant corporation had ignored the notice of suit or neglected to give attention to the matter. In this respect the present case is factually different from *Haynes v. Ruhoff*, 261 Iowa 1279, 157 N.W.2d 914 and *Hansman v. Gute*, 215 N.W.2d 339 (Iowa 1974). Any failure to timely appear and defend was not the corporation's but due to a mistake of defendant's liability insurance carrier as to the date the appearance was due. See *Haynes v. Ruhoff*, 261 Iowa at 1285, 157 N.W.2d at 917, citing *Hobbs v. Martin Marietta Co.*, 257 Iowa 124, 131 N.W.2d 772.

In view of defendant's promptness in filing answer it cannot be logically maintained under this record that there was any undue delay of trial on the merits which could have been had in regular course but for this appeal. There is no showing of prejudice to plaintiff. *Edgar v. Armored Carrier Corporation*, 256 Iowa at 706, 128 N.W.2d at 925–926.

This is not a factual situation in which the defaulting defendant waited until notified a default had been entered and then attempted to excuse untimeliness but one where within the time determined by the insurer, even though wrong, steps were taken to have a timely appearance and defense filed on behalf of its insured.

It must be conceded there was a misconstruction of a proper legal notice as in *Wil-*

*liamson v. Casey*, 220 N.W.2d at 640. However, the misconstruction here was not by defendant, a party to the action, but by the party's insurance carrier.

In this connection plaintiff, although conceding this court has not specifically so held, maintains that negligence of the insurance carrier is imputable to the insured. In support of this position it cites *Stevens v. Gulf Oil Corporation*, 108 R.I. 209, 274 A.2d 163, 164. We have studied the *Stevens* case and the authorities cited by the court in support of its position. Other jurisdictions adopting this position are cited in *St. Arnold v. Star Expansion Industries*, 268 Or. 640, 521 P.2d 526, 532–533.

On the other hand, the Minnesota court in *Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 53 N.W.2d 454, 456, a decision cited with apparent approval by this court in *Edgar*, 256 Iowa at 706, 128 N.W.2d at 925, expresses the view that: "Where a defendant with reasonable promptness delivers the summons and complaint to its insurer which by contract is obligated to defend the suit, the negligence of the insurer in failing to forward the papers to the attorney for answering until shortly after the time for answering has expired is not to be imputed to defendant so as to bar the opening of a default judgment where, in the exercise of a sound judicial discretion, it appears that defendant after receiving notice acted with diligence, has a defense on the merits, and where, as here, no substantial prejudice will result to plaintiff."

The foregoing quote is repeated and relied on as a basis for decision in *Tousley v. Howe*, 263 Minn. 366, 116 N.W.2d 590, 592–593. The *Hinz* opinion was also cited, analyzed and discussed at length in *Busser v. Noble*, 8 Ill.App.2d 268, 131 N.E.2d 637, 641–642, where the Illinois court reversed and remanded a cause with directions to enter an order vacating default judgment and permitting defendant against whom default judgment had been entered to answer the complaint.

The *Hinz* opinion was cited in *White v. Holm*, 73 Wash.2d 348, 438 P.2d 581, 584 and *Parsons v. McCoy*, 202 S.E.2d 632, 636–637 (W.Va.1973), with approval.

The court in *St. Arnold v. Star Expansion Industries*, 268 Or. 640, 521 P.2d 526, 533, declined to follow the *Hinz* case and elected to adopt the holding in *Stevens v. Gulf Oil Corporation*, 108 R.I. 209, 274 A.2d 163, but conceded "that in deciding whether or not to set aside default judgments in cases in which no previous appearance has been made as a result of negligence by an insurance company much depends upon the facts of the particular case. See Annot., 87 A.L.R.2d 870 (1963)." The factual situation presented in *St. Arnold* is a far cry from the facts presented by the record in the case presently before this court.

As stated, the trial court's ruling is founded both upon the fact defendant failed to show it possessed a meritorious defense as well as the fact it "failed to account * * * for the delay * * *."

In this division we are concerned with the second finding, which necessarily entails the conclusion defendant was unsuccessful in showing " * * * his failure to defend was not due to his negligence or want of ordinary care or attention, or to his carelessness or inattention. He must show affirmatively he did intend to defend and took steps to do so, but because of some misunderstanding, accident, mistake or excusable neglect failed to do so. Defaults will not be vacated where the movant has ignored plain mandates in the rules with ample opportunity to abide by them. * * [citing authorities]." *Dealers Warehouse Co. v. Wahl & Associates*, 216 N.W.2d at 394–395.

We have set forth this court's rules of review in this type of case. And in this regard, the *facts* relied upon are not in dispute. Rather, it is only the effect they have under the circumstances that is controverted. It therefore becomes apparent, under the undisputed facts of this case, the only logical inference to be drawn from the decree is: the trial court found defendant's insurer's neglect, carelessness or inattention was imputable to defendant.

In connection with this, " ' * * * effect must be given to that which is *clearly implied* as well as to that which is expressed.' * * * [citing authorities]." (Emphasis supplied). *Cooper v. Cooper*, 158 N.W.2d 712, 713 (Iowa 1968); *In Re Marriage of Woodward*, 229 N.W.2d 274, 277–278 (Iowa 1975).

Thus the following statement from *Connie's Const. v. Fireman's Fund Ins.*, 227 N.W.2d 207, 209 (Iowa 1975), becomes singularly relevant:

"This is a law action tried to the court. If the trial court's findings of fact are supported by substantial evidence and were not induced by an erroneous view of the law they will be sustained. However, we are not bound by findings of fact resulting from application of erroneous rules of law, nor are we bound by trial court determinations of law. * * * [citing authority]."

In other words, " * * * the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, a conclusion of law drawn therefrom is correct, * * *." *Whewell v. Dobson*, 227 N.W.2d 115, 117 (Iowa 1975). See also *In Re Estate of Northup*, 230 N.W.2d 918, 921 (Iowa 1975).

Since the trial court made a finding defendant failed to account for the delay the conclusion is inescapable in the present case it applied a rule of law imputing an insurer's negligence in determining the date of appearance to its insured. If this court, then, were to follow the *Hinz* rationale it would become obvious the trial court applied an incorrect legal standard to the facts herein—facts which show a defendant diligent in pursuit of the defense against plaintiff's cause of action.

The diligence of Thompson as set out earlier sustains the burden placed on defendant as a movant in a motion to set aside the default in accord with the pro-

nouncement in *Dealers Warehouse Co. v. Wahl & Associates,* supra. Defendant had no reason to anticipate the failure of its insurer to attend to the case. The circumstances disclosed by the record were consistent with an intent to defend which was frustrated by the mistake of the insurer as to the appearance date.

In the court's opinion the statement quoted herein from *Hinz v. Northland Milk & Ice Cream Co.,* 237 Minn. at 30, 53 N.W.2d at 456, announces a fair and just rule well adapted to a consideration of the factual circumstances presented by this record. We therefore hold the trial court erred in imputing to defendant the insurer's mistake as to the appearance date under such circumstances.

II. As pointed out the trial court based its decision partly upon the fact no meritorious defense had been pleaded or proved. The court noted that " * * * absolutely no proof has been offered by anyone cognizant of the facts setting forth what facts exist which create a prima facie defense for Defendant nor is the Court in any way, apprised of what the theory of the defense will be."

■ Since "good cause" does not exist without a defense this court has held that a movant to set aside a default under rule 236, R.C.P., is required at least to assert in good faith a claimed defense to plaintiff's action or as some courts state at least a prima facie showing of ' a meritorious defense. See *Insurance Co. of No. Amer. v. Sperry & Hutchison Co.,* 168 N.W.2d at 756. The court's duty in a proceeding for relief under this rule is to ascertain from the evidence whether facts exist which, if established on a trial on the merits, would prima facie constitute a defense. *Handy v. Handy,* 250 Iowa 879, 884, 96 N.W.2d 922, 925. However, this principle does not require the allegations of a defense which can be guaranteed to prevail at trial. See *Kirby v. Holman,* 238 Iowa 355, 375, 25 N.W.2d 664, 675.

■ The specific question involved is whether a general denial in a pleading constitutes a prima facie showing of a meritorious defense in proceedings to set aside a default under rule 236, R.C.P.

Iowa rule 236, R.C.P., is patterned after rule 56, Fed.R.Civ.P. Where this occurs we have said interpretations of the Federal Rules are persuasive. *Swisher & Cohrt v. Yardarm, Inc.,* 236 N.W.2d 297, 298 (Iowa 1975).

The following statement from 10 Wright & Miller, Federal Practice and Procedure, section 2697, pages 344–345, is obviously relevant even though it deals with the Federal Rules of Civil Procedure:

" ' * * * The bare wording of Rule 60(b) does not require the showing of the existence of a meritorious defense but this is judicially established and apparently ,is left within the sound discretion of the trial court. Just as there are few guideposts as to what constitutes excusable neglect or inadvertence in any given case, there is no universally accepted standard among courts as to what satisfies the requirement that a party show a meritorious defense. Roughly the cases fall into three categories. Some courts have insisted upon a specific recitation of facts in the motion, answer or affidavit which, if proven, would constitute a meritorious defense. * * * Another approach to the problem is that group of cases which accepts allegations, conclusions and even denials in the moving party's motion or supporting affidavit. * * * Finally, the courts have treated oral statements, affidavits *or the court's own assumption* as sufficient indication of the existence of a meritorious defense. * * * These latter cases reflect that the trial courts are permitted a great deal of latitude in exercising their discretion as to what constitutes a showing of meritorious defense.' (Emphasis in original). [*Trueblood v. Grayson Shops of Tennessee, Inc.,* 32 F.R.D. 190, 196 (D.C.Va.1963)].

"A majority of the courts that have considered the question have refused to accept

general denials or conclusory statements that a defense exists; they have insisted upon a presentation of some factual basis for the supposedly meritorious defense. Some judges have been willing to accept assertions of a defense advanced by motion or affidavit. In a few instances, courts merely have looked for some indication of a meritorious defense, even to the extent of simply recognizing that the nature of the case was such that it suggested the possible existence of a defense."

The upshot of this and the Iowa authorities cited herein seems to be that whether a meritorious defense has been shown " * * must be determined on a case by case basis and with an awareness of the policies behind default judgments and the circumstances under which they should be set aside." Wright & Miller, supra, section 2697, page 346.

In *Springer Corporation v. Herrera*, 85 N.M. 201, 510 P.2d 1072 (1973), a rather extreme case applying liberal standards as to the showing of a meritorious defense, plaintiff sued defendant for injuries resulting when a self-loading machine lost a wheel and overturned. The complaint alleged negligence on the part of defendant. No answer being filed, default judgment was entered against defendant in the amount of $250,000.00. The trial court denied defendant's motion to set aside the judgment, and a New Mexico Court of Appeals affirmed (*Herrera v. Springer Corporation*, 85 N.M. 6, 508 P.2d 1303 (1973)).

The New Mexico Supreme Court *reversed* the trial court's conclusion defendant had not shown a meritorious defense as well as the Court of Appeals' holding this did not constitute an abuse of discretion. " * * * The statement by defendant alleging no negligence, and the further statement that the defendant was merely the delivering agent, would be sufficient information to allege a meritorious defense." 85 N.M. at 203, 510 P.2d at 1074.

The decision sets forth general rules regarding consideration of motions to set aside default judgments and noted, " * * because courts universally favor trial on the merits, slight abuse of discretion in refusing to set aside a default judgment will often be sufficient to justify reversal of the order. *Bridoux v. Eastern Air Lines*, 93 U.S.App. D.C. 369, 214 F.2d 207 (1954)." 85 N.M. at 203, 510 P.2d at 1074.

In addition to the liberality in determining what constitutes good cause the New Mexico court believed " * * * that the trial court should also be liberal in determining what is a meritorious defense. We are not unmindful that some federal courts require a statement of underlying facts to support an allegation that a meritorious defense exists. * * * [citing authorities].

" * * * We must insist, however, that in exercising its discretion the trial court apply a liberal standard. We do not believe such a standard was applied in this case. * * *

" * * *

"The defendant did make a prompt application for relief, did not exhibit willfulness in failing to heed the process of the court, and did make a substantial showing of excusable neglect, * * *. When there is a satisfactory showing of grounds such as excusable neglect (the trial court applying liberal standards in arriving at this determination), then the trial court should also apply liberal standards in determining whether there is a satisfactory showing of meritorious defense." 85 N.M. at 203, 510 P.2d at 1074.

At the forefront are several factors rendering *Springer* particularly apposite to the case at hand. First, *Springer* involved a reversal of the trial court's findings. Second, both cases involve mainly general denials, although in *Springer* there was one affirmative statement. Third, both cases involve tremendous amounts of money. Fourth, the defendants were diligent in attempting to remedy default—thus plaintiff was not substantially prejudiced by the delay. Fifth, and perhaps most momentous,

*Springer* worked to set aside a default judgment. Thus, that case necessarily applied tougher standards than are required of application by this court to set aside entry of default. There is no final judgment here and thus no interest in finality.

Along this same line see *Ellington v. Milne,* 14 F.R.D. 241, 242 (E.D.N.C.1953); *Dalminter, Inc. v. Jessie Edwards, Inc.,* 27 F.R.D. 491, 492 (1961); *Trueblood v. Grayson Shops of Tennessee, Inc.,* 32 F.R.D. 190, 196 (E.D.Va.1963); *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 244 (3 Cir. 1951); and *Rooks v. American Brass Company,* 263 F.2d 166, 169 (6 Cir. 1959).

It was essential to the maintenance of plaintiff's claim for relief asserted in the various divisions of the petition that it establish at least either existence of an implied warranty of fitness of the product relied on by plaintiff, breach of that warranty by defendant to the damage of plaintiff or existence of an implied warranty of merchantability, defendant's knowledge of plaintiff's intended use of the fabrics, breach of that warranty by defendant to plaintiff's damage or negligence of defendant in one or more of the particulars specified in the manufacture, sale and distribution of the product, proximate cause and damage to plaintiff.

Under its general denial Morbern might refute proof of these essentials by offering any competent evidence which would negative their existence. In other words, defendant's general denial served to put in issue existence of those elements essential to plaintiff's maintenance of its action. It therefore constituted a prima facie showing of a meritorious defense. See *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632, 642 (Iowa 1969) and *Kuehn v. Jenkins,* 251 Iowa 718, 728, 100 N.W.2d 610, 616.

The trial court erred in holding otherwise.

With directions to proceed in accordance with the Rules of Civil Procedure the case is therefore—Reversed and remanded.